ANGEL HERNANDEZ,

        Plaintiff,

-vs-                                Case No.  6:08-cv-927-Orl-28GJK

MOHAWK INDUSTRIES, INC.,

        Defendant.
_____

## ORDER

Angel Hernandez ("Plaintiff") brings the instant action against Defendant Mohawk Industries, Inc. ("Defendant"), alleging that his employment was terminated for several unlawful reasons.  In his Complaint (Doc. 1), Plaintiff sets forth five counts:  disability discrimination under the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act of 1992 ("FCRA") (Count I); age discrimination under the Age Discrimination in Employment Act ("ADEA") and the FCRA (Count II); retaliation under the Surface Transportation Assistance Act ("STAA") (Count III); violation of Florida's Whistleblower Act ("FWA") (Count IV); and wrongful discharge/breach of contract under Florida law (Count V[1]).

The case is now before the Court on Defendant's Motion for Summary Judgment (Doc. 34), in opposition to which Plaintiff has filed a Response (Doc. 36).  Having considered the parties' submissions and applicable law, the Court concludes that Defendant's motion

_____

[1]In the Complaint, this count is mislabeled as "Count IV"; in other words, there are two counts labeled "Count IV."  (See Doc. 1 at 11-12).

must be granted in part and denied in part.

## I.  Background

Plaintiff was hired in August 1999 by one of Defendant's subsidiaries,[2] Aladdin Manufacturing Corporation, as a truck driver, working out of a warehouse in Orlando. Plaintiff's employment was terminated on March 23, 2007, shortly after it was determined that he had been involved in a second "preventable" accident within two months.  Plaintiff claims that he was terminated based on his age (58 at the time of termination), his disability (hearing impairment), and in retaliation for complaining about Defendant's safety violations. Plaintiff also claims that his termination constituted a breach of contract.  Defendant, however, maintains that after the two preventable accidents,[3] Plaintiff was terminated in accordance with its written "Corrective Action Policy."

## II.  Discussion

### A.  Summary Judgment Standards

---

[2]In a footnote to its motion, Defendant argues that it never employed Plaintiff, asserting that instead Plaintiff was at all times employed by one of Defendant's subsidiaries. (See Doc. 34 at 2 n.2).  However, the Court cannot grant summary judgment on this issue on the record before it, especially considering Defendant's lack of vigor in arguing this point. In any event, references herein to "Defendant" as employing Plaintiff are for ease of discussion only, and the Court makes no finding or ruling at this time as to what entity or entities may properly be regarded as Plaintiff's former "employer."

[3]In the first accident, Plaintiff was driving on the Florida Turnpike and braked to avoid a tire retread that had come loose from a vehicle ahead of him and was lying in the highway. Plaintiff did not collide with another vehicle, but the load in his trailer breached the front of the trailer upon braking.

In the second accident, damage to another tractor in the warehouse was determined to have been caused by Plaintiff hitting the tractor when he backed his trailer in.  Plaintiff denied hitting the other tractor but admitted to having difficulty backing his trailer in.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1261 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999)

("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]he summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Chapman v. AI Transp., Inc., 229 F.3d 1012, 1026 (11th Cir. 2000).

B. The Merits of Defendant's Motion

1. Count I—Disability Discrimination

Plaintiff asserts in his first count that he was terminated because of his hearing impairment, in violation of the ADA[4] and the FCRA.[5] Defendant argues that Plaintiff cannot prevail on his disability discrimination claim because he did not have a "disability" within the meaning of the ADA. "Disability" is defined by the statute as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Defendant argues that Plaintiff cannot satisfy any of these three alternative ways[6] of meeting the definition of "disability," and the Court agrees.

---

[4]42 U.S.C. §§ 12101-12213.

[5]§§ 509.092 & 760.01-760.11, Fla. Stat. "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims," and the Court therefore will "consider both claims together." Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007).

[6]It is far from clear from the Complaint which of these three alternatives Plaintiff is asserting in this case. Plaintiff alleged: that "Plaintiff has a disability in that he wears a hearing aid and is partially deaf" (Doc. 1 ¶ 41); that "Defendant was aware of Plaintiff's impairment and Defendant knew that Plaintiff's hearing impairment was corrected by hearing aids," (id. ¶ 43); and that "Defendant through its Orlando area supervisors began to perceive that Plaintiff had a substantially limiting impairment with his hearing when, in fact, the impairment is not so limiting," (id. ¶ 45).

First, Plaintiff has not presented evidence that he suffered from "a physical or mental impairment that substantially limits one or more of [his] major life activities." Although hearing is defined as a "major life activity"[7] and it is undisputed that Plaintiff wore a hearing aid while he worked for Defendant, these facts alone are not sufficient to establish that Plaintiff had a "disability" within the meaning of the ADA. In <u>Sutton v. United Air Lines</u>, 527 U.S. 471, 488 (1999), the Supreme Court held "that disability under the [ADA] is to be determined with regard to corrective measures."[8] In other words, under <u>Sutton</u>, "those

---

[7]"Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, **hearing**, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (emphasis added).

[8]The Supreme Court's ruling in <u>Sutton</u> has been overturned in part by legislative action. In September 2008, the ADA Amendments Act of 2008 was enacted, with an effective date of January 1, 2009. That Act provides that some corrective devices, including hearing aids, are **not** to be considered in making the determination of whether a person is disabled. However, as noted by Defendant, the events at issue here occurred in 2007 or earlier, and courts addressing the issue have held that the ADA Amendments Act does not apply retroactively. <u>See, e.g.</u>, <u>Milholland v. Sumner County Bd. of Educ.</u>, 569 F.3d 562, 567 (6th Cir. 2009); <u>Herzog v. Loyola Coll. in Md., Inc.</u>, Civ. Action No. RDB-07-02416, 2009 WL 3271246, at *5 n.3 (D. Md. Oct. 9, 2009) (collecting cases). The Eleventh Circuit Court of Appeals has not addressed this issue in a published opinion. <u>See</u> <u>Shannon v. Postmaster Gen.</u>, No. 08-16827, 2009 WL 1598442, at *2 n.5 (11th Cir. June 9, 2009) (noting lack of an Eleventh Circuit published opinion on the issue and finding it unnecessary to address the question). However, one unpublished decision at least suggests that that court declines to apply it retroactively. <u>Fikes v. Wal-Mart, Inc.</u>, 322 F. App'x 882, 883 n.1 (11th Cir. 2009) ("Plaintiff makes no argument that the amendments should apply retroactively; and absent Congressional expression to the contrary, a presumption against retroactive application applies when the new legislation would 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' So, we look to the ADA as it was in effect at the time of the alleged discrimination.") (citation omitted). Plaintiff has not taken issue with Defendant's position regarding nonretroactivity of the ADA Amendments Act or to Defendant's citation to the pre-Amendments Act provisions. This Court applies and cites the pre-Amendments Act provisions of the ADA and accompanying regulations herein.

whose impairments are largely corrected by medication or other devices are not 'disabled' within the meaning of the ADA."  Id. at 486; accord Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1264 (11th Cir. 2007).  Although "use of a corrective device does not, by itself, [necessarily] relieve one's disability," "one has a disability under subsection (A) [only] if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity."  Sutton, 527 U.S. at 488.

In the instant case, it is not disputed that Plaintiff wore a hearing aid, but there is no evidence that Plaintiff's hearing was in any way impaired—much less "substantially limited"—when he wore his hearing aid.  Plaintiff testified in his deposition that with his hearing aid he has "no problem" hearing.  (Pl. Dep., Ex. 3 to Doc. 35, at 233). Thus, Plaintiff does not meet the definition of "disability" under subparagraph (A) of 42 U.S.C. § 12102(2). Additionally, there is no evidence of "a record of such an impairment," and subparagraph (B) is not satisfied either.

The third possible way that Plaintiff could satisfy the "disability" definition is if he was "regarded as" having an impairment that substantially limited his hearing.  See 42 U.S.C. § 12102(2)(C).  "As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual" in order to rise to the level of a "disability" under the statute.  Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1230 (11th Cir. 1999).

The Court agrees with Defendant that "[t]here is simply no evidence that [Defendant] considered Plaintiff as anything other than an employee who had a hearing problem that was corrected by his hearing aid."  (See Doc. 34 at 12).  When Plaintiff's hearing aid broke in July

2006, Plaintiff was not allowed to drive because he could not pass the Department of Transportation ("DOT") physical without it; however, once the hearing aid was fixed and he passed the DOT medical exam, Defendant put him back to work driving.  (See Pl. Dep. at 139, 145).  "Where a 'defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact,' 'a finding that plaintiff was regarded as disabled and, therefore . . . entitled to the protections of the ADA[,] is inappropriate."  Hilburn, 181 F.3d at 1230 (quoting McCollough v. Atlanta Beverage Co., 929 F. Supp. 1489, 1498 (N.D. Ga. 1996), and Bute v. Schuller Int'l Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)) (second alteration in original) (citations omitted).  There is no evidence to support Plaintiff's bare assertions that Defendant "regarded him as disabled" within the meaning of the law.[9] Thus, Plaintiff's ADA claim fails, and Defendant is entitled to summary judgment on Count I.

    2.  Count II—Age Discrimination

    In Count II of his Complaint, Plaintiff alleges that he was terminated because of his age, in violation of the ADEA[10] and the FCRA.  However, Defendant correctly argues that

_____

    [9]The only evidence that Plaintiff has submitted that bears on this issue are the statement in Plaintiff's affidavit that he "was frequently mocked for [his] hearing condition" during his employment with Defendant, (Pl. Aff., Ex. I to Doc. 36, ¶ 18), and the statement in the affidavit of Enrique Alvarez, a former driver for Defendant, that "[w]hile in the warehouse [he] often overheard jokes being made by warehouse personnel and drivers at the expense of [Plaintiff]," including "remarks about his inability . . . to hear," (Alvarez Aff., Ex. II to Doc. 36, ¶ 6).  These statements are vague and, even if they could be attributed to management—which they cannot—do not support an inference that Defendant regarded Plaintiff as having a substantially limiting hearing impairment.

    [10]29 U.S.C. § 621 et seq.

Plaintiff has no viable age discrimination claim because he did not file an administrative charge alleging age discrimination.

The ADEA provides that in part that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d). "The purposes of this requirement are threefold. First, it allows the EEOC to notify the charging party's employer. Second, it provides the EEOC with the opportunity to investigate the charge on its own. Third, it allows the EEOC to use its informal conciliation procedures to remedy the practice, thereby avoiding the need for litigation." Cline v. Gen. Elec. Credit Auto Lease, Inc., 748 F. Supp. 650, 653 (N.D. Ill. 1990). "[A] 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)). "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." Id. at 1279-80 (quoting Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989)).

Plaintiff did file a charge with the EEOC, but in that charge he alleged only discrimination based on disability and did not mention anything about age-based discrimination. (Charge of Discrimination, Ex. 35 to Hernandez Dep.). His claim of age discrimination cannot be said to "reasonably be expected to grow out of" an investigation of his charge of disability discrimination. Such assertions by discrimination plaintiffs who seek

-8-

to add totally unrelated forms of discrimination in court after filing a charge on a different basis have been repeatedly rejected in this circuit.  See, e.g., Chanda v. Engelhard/ICC, 234 F.3d 1219, 1224-25 (11th Cir. 2000) (finding that EEOC charge did not encompass claim of retaliation for complaints of national origin discrimination where charge mentioned disability-based retaliation but did not mention national origin in any way); accord Enwonwu v. Fulton-Dekalb Hosp. Auth., 286 F. App'x 586, 600 (11th Cir. 2008) ("Enwonwu's Title VII charges based on race and national origin were appropriately barred because those charges could not 'reasonably be expected to grow out of the EEOC disability charge.'"); Minix v. Jeld-Wen, Inc., 237 F. App'x 578, 588 (11th Cir. 2007) (noting that while "'the scope of an EEOC complaint should not be strictly interpreted,' . . . 'allegations of new acts of discrimination are inappropriate'" and finding that claim based on tangible employment action was not related to alleged claim of hostile work environment that was asserted in administrative charge and thus was barred) (quoting Gregory, 355 F.3d at 1279-80).  Moreover, Plaintiff's argument that it is sufficient that he told the EEOC orally that he was alleging age discrimination—even if that statement is accepted is true[11]—is not well-taken.  See Cline, 748 F. Supp. at 653 ("Ms. Cline's only argument for allowing her ADEA claim to stand is that she *mentioned* age discrimination in her initial interview with the EEOC.  While the ADEA's charge-filing requirements are flexible, at a minimum, the complaining party must reduce her objections to *writing*.  It is undisputed that Ms. Cline did that only when she read and signed the formal

---

[11]Defendant asserts that Plaintiff makes this assertion for the first time in his affidavit and that he did not claim at his deposition to have orally told the EEOC that he was alleging age discrimination.

-9-

charge . . . , and it is that charge [alleging only sexual harassment] that determines the claims which she may maintain in this court.") (footnote omitted).

Because Plaintiff did not allege discrimination based on age in his administrative charge, his claim of age discrimination is not properly before this Court. Defendant is therefore entitled to summary judgment on Count II.

### 3. Count III—Surface Transportation Assistance Act

In Count III of his Complaint, Plaintiff alleges that he was terminated in violation of the Surface Transportation Assistance Act[12] ("STAA"). This statute provides in part that "[a] person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because . . . the employee . . . has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety regulation, standard, or order, or has testified or will testify in such a proceeding." 49 U.S.C. § 31105(a)(1)(A).[13]

Defendant asserts that Plaintiff cannot prevail on this claim because he did not engage in protected activity and because Defendant has given nondiscriminatory reasons for its termination of Plaintiff that were not related to any safety complaints that he made. However, a more fundamental problem with this count requires its dismissal—Plaintiff may not bring a claim in this court under the STAA.

---

[12]49 U.S.C. § 31100 et seq.

[13]This section was amended on August 3, 2007—after the events at issue in this case—and now reads slightly differently. The version quoted in the text is the pre-August 2007 version of the statute.

The STAA sets forth detailed procedures, including that "[a]n employee alleging discharge, discipline, or discrimination in violation of [49 U.S.C. § 31105(a)], . . . may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred." 49 U.S.C. § 31105(b)(1). Then, "the Secretary shall notify the person alleged to have committed the violation of the filing of the complaint," id., and "[n]ot later than 60 days after receiving a complaint, the Secretary shall conduct an investigation, decide whether it is reasonable to believe the complaint has merit, and notify the complainant and the person alleged to have committed the violation of the findings," id. § 31105(b)(2)(A). Either party may then request a hearing, and if a hearing is conducted the Secretary issues a final order; if a violation is found, the Secretary "shall order" certain relief to be afforded to the complainant. Id. § 31105(b)(2)(B)-(3)(A). "A person adversely affected by an order issued after a hearing . . . may file a petition for review . . . in the court of appeals of the United States for the circuit in which the violation occurred or the person resided on the date of the violation." Id. § 31105(c). And, "[i]f a person fails to comply with an order issued under subsection (b) of this section, the Secretary shall bring a civil action to enforce the order in the district court of the United States for the judicial district in which the violation occurred." Id. § 31105(d).

On its face, then, this statute, though barring discharge of employees on the basis of complaints of violations of commercial motor vehicle safety regulations, does not authorize a direct civil action in a district court by a discharged employee against his employer. Instead, the statute provides for an administrative scheme which might culminate in either

review by a circuit court of the Secretary of Labor's order[14] or in a suit brought by the Secretary of Labor in a district court.  Cf. Brock v. Roadway Express, Inc., 481 U.S. 252, 255 (1987) (noting that the statute provides for initial investigation by the Secretary or Labor, potentially followed by an order, a hearing, and a final decision by the Secretary).  At least one district court has expressly noted that the STAA "does not provide for a private right of action," Kornischuk v. Con-Way Central Express, No. Civ. 1-03-CV-10013, 2003 WL 21977202, at *3 (S.D. Iowa June 4, 2003), and indeed, it does not.  It sets forth an administrative enforcement scheme that was available to Plaintiff but which was apparently not pursued by him.  His claim in this court is improper and not actionable.  Count III thus fails.

### 4.  Count IV—Florida Whistleblower Act

In Count IV, Plaintiff brings a claim under the Florida Whistleblower Act[15] ("FWA"), which provides in pertinent part:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation.  However, this subsection does not apply unless the

---

[14]The two STAA cases cited by Defendant in its summary judgment motion were appeals to a circuit court of Secretary of Labor orders.  See Ridgley v. U.S. Dep't of Labor, 298 F. App'x 447 (6th Cir. 2008); Moon v. Transp. Drivers, Inc., 836 F.2d 226 (6th Cir. 1987). The only other case cited by Defendant in this portion of its motion, Mickey v. Zeidler Tool & Die Co., 516 F.3d 516 (6th Cir. Cir. 2008), did not involve the STAA and is cited only more generally for the elements of retaliatory discharge.  (See Doc. 34 at 19).

[15]§§ 448.101-.105, Fla. Stat.

employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

§ 448.102, Fla. Stat. As the Supreme Court of Florida has noted, the three subsections of this provision thus prohibit retaliatory personnel action "on the basis of three distinct types of activities": disclosing, assisting, and objecting. Golf Channel v. Jenkins, 752 So. 2d 561, 564 (Fla. 2000). In his Complaint, Plaintiff does not identify under which subsection he is bringing this claim,[16] but the only subsection under which he may properly proceed is subsection (3); he may not pursue a claim under subsection (1) because he did not make any complaint in writing or provide notice to Defendant in writing,[17] and there is no evidence of an investigation or inquiry with which Plaintiff was "assisting" that could satisfy subsection

---

[16]In the Complaint, Plaintiff alleges: that he "threatened to disclose to the Department of Transportation that Defendant was loading pallets in its trucks and trailers which were in violation of Department of Transportation regulations and were unsafe in violation of Section 316.520 of the Florida Statutes and 49 C.F.R. s. 393.100," (Doc. 1 ¶ 78); that he "provided notice in writing of this to the Human Relations section of Defendant," (id. ¶ 79); that he "objected to operating Defendant[']s trucks while the trailers were loaded with pallets that were insufficiently secured and unsafe," (id. ¶ 80); and that he "was terminated from his employment with Defendant because Plaintiff complained of Defendant's violations of Section 316.520 of the Florida Statutes and 49 C.F.R. s. 393.100 and Department of Transportation regulations, the unsafe loading and securing of pallets in Defendant's trucks, and violations of safety regulations which Plaintiff observed at Defendant's warehouse," (id. ¶ 81).

[17](See Pl. Dep. at 250-51).

(2).

Florida courts and the Eleventh Circuit apply the Title VII burden-shifting framework and case law to claims under the FWA.  See, e.g., Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950-51 (11th Cir. 2000); Rice-Lamar v. City of Fort Lauderdale, 853 So. 2d 1125, 1132-33 (Fla. 4th DCA 2003).  Under this analysis, which applies in the absence of direct evidence of discrimination,[18] the plaintiff has the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  As the Eleventh Circuit has noted, "[d]emonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  If the plaintiff establishes a prima facie case, a presumption of discrimination arises.  See, e.g., Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Once the plaintiff has presented a prima facie case and its attendant presumption, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions.  McDonnell Douglas, 411 U.S. at 802.  The employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves v. Sanderson

---

[18]See, e.g., EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000) ("Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence. . . . Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar McDonnell Douglas paradigm for circumstantial evidence claims.") (citations omitted); accord Harris v. Sec'y of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997) ("Because she has no direct evidence of discrimination, Harris' sex discrimination claim is governed by the burden shifting analysis first articulated in McDonnell Douglas v. Green.").

Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  If the employer meets its burden of production, "'the McDonnell Douglas framework—with its presumptions and burdens'—disappear[s], and the sole remaining issue [is] 'discrimination vel non.'"  Id. at 142-43 (quoting St. Mary's Honor Ctr., 509 U.S. at 510, and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)).

To establish a prima facie case of retaliation under the FWA, a plaintiff must prove that (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action; and (3) the adverse employment action was causally linked to the statutorily protected activity.  White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  It is undisputed that Plaintiff was terminated, and thus the second element is satisfied.  However, Defendant contends that Plaintiff cannot satisfy a prima facie case because he cannot establish the first and third elements.

Defendant asserts that Plaintiff cannot meet the first element—that he engaged in protected activity—because Plaintiff cannot prove that Defendant was violating a law, rule, or regulation.[19]  In his Complaint, Plaintiff asserts that he complained about Defendant violating section 316.520, Florida Statutes, as well as 49 C.F.R. § 393.100 and "Department of Transportation regulations."  (See Doc. 1 ¶ 81).  Section 316.520 provides in part that "[a]

_____

[19]Based on the plain language of the statute, when proceeding under subsection 448.102(3) a plaintiff "must prove that the activity, policy or practice objected to is, in fact in violation of a law, rule, or regulation."  White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1337 (M.D. Fla. 2005).

vehicle may not be driven or moved on any highway unless the vehicle is so constructed or loaded as to prevent any of its load from dropping, shifting, leaking, blowing, or otherwise escaping therefrom."  § 316.520(1), Fla. Stat.  Regulation 393.100 provides that "[e]ach commercial motor vehicle must, when transporting cargo on public roads, be loaded and equipped, and the cargo secured, in accordance with this subpart to prevent the cargo from leaking, spilling, blowing or falling from the motor vehicle" and that "[c]argo must be contained, immobilized or secured in accordance with this subpart to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected."  49 C.F.R. § 393.100(b)-(c).

Defendant contends that "the actions by DOT and OSHA in rejecting Plaintiff's concerns . . . belie any notion that what Plaintiff complained about violated the law."  (Doc. 34 at 24).  Defendant is referring to the fact that Plaintiff testified in his deposition that he called DOT but DOT told him to call OSHA, and he called OSHA but OSHA told him it was "not their department."  (Pl. Dep. at 251, 253).

However, Plaintiff has testified in his deposition and in his affidavit that he complained repeatedly about the way trucks were loaded.  Moreover, there is some evidence, including the report of Defendant's Appeal Committee regarding Plaintiff's February 2006 "preventable" accident—of "freight that had not been secured."  (See Appeal Committee Decision Letter, Ex. 29 to Pl. Dep.).  This evidence is sufficient to survive summary judgment on this element.

With regard to the third, causal link prong, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action

is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000). Plaintiff has stated that he was objecting to Defendant's practices regarding loading and securing of cargo within the month prior to his termination,[20] and this short temporal proximity ordinarily is enough to satisfy this element. "However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Id. Defendant relies on this proposition to defeat the third element, asserting that there is "no evidence that the relevant decision makers were aware of Plaintiff's external complaints, and the internal complaints are hardly enough to put [Defendant] on notice of a complaint about a violation of a law." (Doc. 34 at 24). However, the internal complaints—which Defendant apparently concedes were made to decision makers[21]—are what constitute the "objecting" here, and thus the exception recognized in Brungart does not apply and the third element is satisfied by temporal proximity.

Because Plaintiff has made out a prima facie case of retaliation under the Whistleblower Act, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff. Defendant has done so by pointing out that

---

[20](See Pl. Dep. at 250 (Plaintiff's testimony that he complained starting in March 2006 and that his complaints continued "[a]ll the way until [he] got terminated")).

[21]Even if Defendant's statement distinguishing internal and external complaints could not properly be read as a concession that internal complaints were made to decisionmakers, at a minimum there is an issue of fact as to whether such complaints were made to decisionmakers. The evidence must be viewed in the light most favorable to Plaintiff, as the nonmovant, at this stage of the case.

Plaintiff was involved in two accidents that were determined to be "preventable" within the last month of his employment and by asserting that he was thus properly terminated in accordance with the company's "Corrective Action Policy." Therefore, Defendant is entitled to summary judgment unless Plaintiff presents evidence creating a genuine issue of material fact regarding whether Defendant's stated reason is a mere pretext for discrimination. See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claims."); accord Evans v. McClain of Ga., Inc., 131 F.3d 957, 964-65 (11th Cir. 1997) ("Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons.").

In determining whether an issue has been raised as to pretext, this Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted)). This determination involves an "evaluat[ion of] whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find

them unworthy of credence.'" Id. (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996) (citation and internal quotation marks omitted)).

Plaintiff relies on the language of Defendant's Corrective Action Policy as support for his argument regarding pretext. Defendant has submitted this Corrective Action Policy as an exhibit to the Declaration of Plaintiff's former supervisor, Richard Coover (Ex. 1 to Doc. 35 and Ex. 1 thereto), in which Coover attempts to explain the operation of the policy. However, the Court has been unable to understand exactly what Defendant's position is with regard to the application of the policy to his case. The policy, as noted by Coover, provides for "three opportunities for counseling before termination." (See Corrective Action Policy at 1; Coover Decl. ¶ 3). Coover—who became Plaintiff's supervisor in March 2006—states that Plaintiff "was given counseling for various incidents, with his first incident occurring in 2001." (Coover Decl. ¶ 8). He then states that Plaintiff was given a written reminder in September 2006 for an act of insubordination and was warned that the next incident would result in him being placed on "Decision Making Leave." (Id. ¶ 9). "Decision Making Leave," as described by Coover, is a one-day suspension with pay that is sometimes imposed, (Id. ¶ 4); "Decision Making Leave" is not, however, mentioned in the written Corrective Action Policy that Defendant has submitted.[22]

_____

[22]The written Corrective Action Policy does contain a provision for "Optional Suspension" that states: "Suspension is used rarely and only with the prior consent of the Human Resources Department. This form of corrective action might be applied in instances of serious safety violations or other offenses where corrective action beyond the scope of a written warning is appropriate. Again, this step is optional and cannot be applied without the prior consent of the Human Resources Department." (Corrective Action Policy at 2).
It is not clear whether this provision is equivalent to the "Decision Making Leave" of which Coover speaks in his declaration. If so, there is no evidence or mention of Human

Coover then recounts the determination that Plaintiff was involved in a preventable accident in February 2007, after which he was placed on "Decision Making Leave," followed by a March 2007 preventable accident. (Id. ¶¶ 13-14). Coover then states that Plaintiff "was terminated in accordance with Mohawk's corrective action policy for causing two preventable accidents." (Id. ¶ 18).

Having considered the evidence submitted by Defendant, the Court cannot grant summary judgment to Defendant on Count IV. Coover's declaration describes terms of a corrective action policy that do not appear in the written policy itself. Moreover, as noted by Plaintiff, Coover does not state the basis for his knowledge of incidents that occurred as early as 2001 and upon which Defendant is apparently now relying in part.[23] Defendant appears at first to be alleging that it followed the progression of steps in the policy in terminating Defendant—i.e., four incidents—but Defendant then states that Plaintiff was terminated "for causing two preventable accidents," as if those two accidents stand alone. Although the causation of two preventable accidents in less than one month certainly could constitute a "legitimate" reason for termination, there are enough inconsistencies in Defendant's explanation and enough deficiencies in Defendant's submitted evidence that an

_____

Resources consenting to the imposition of a suspension of Plaintiff as required by the policy.

[23]As Defendant's supervisor, Coover certainly might have a basis for such knowledge; however, no such basis has been stated, and no documentation of these incidents—which were supposed to "become a part of the employee's personnel records," (see Corrective Action Policy at 1)—has been presented by Defendant. Coover does not state that he has personal knowledge of these incidents; he does not state that he has reviewed Plaintiff's personnel file; and Plaintiff's personnel file was not submitted by Defendant, though some pertinent documents were included with the excerpts of Plaintiff's deposition that Defendant submitted.

issue as to pretext is presented here.  In other words, although Defendant met its burden of articulating a nonretaliatory reason, Plaintiff is correct that the inconsistencies with regard to the evidence supporting that reason require denial of summary judgment.

### 5.  Count V—Wrongful Discharge/Breach of Contract

In Count V of the Complaint, Plaintiff brings a claim for "wrongful discharge—breach of contract."  Plaintiff alleges in the Complaint that "Plaintiff and Defendant entered into a contract of employment," (Doc. 1 ¶ 84), but Plaintiff acknowledged in his deposition that at no time during his employment with Defendant did he have a written employment contract, (Pl. Dep. at 59).  Defendant thus argues in its motion that "Plaintiff was an at-will employee and was subject to discharge at any time, for any reason."  (Doc. 34 at 25).  However, in his response to Defendant's summary judgment motion Plaintiff relies on Defendant's Corrective Action Policy for his asserted contractual right to employment.

Neither party has presented detailed argument or case law regarding the circumstances under which an employment policy can create enforceable contract rights in the absence of an employment contract.  However, "[i]t is well-established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract."  Quaker Oats Co. v. Jewell, 818 So. 2d 574, 576-77 (Fla. 5th DCA 2002).  "[I]n the absence of language in the employee manual expressly providing that the manual constitutes a separate employment agreement, or the parties' explicit mutual agreement to that effect, policy statements in the employment manual do not constitute the terms of a contract of

employment." Id. at 578.

The Corrective Action Policy upon which Plaintiff relies in this case for the alleged creation of an employment contract does not give rise to an enforceable right not to be terminated without cause or only in accordance with its provisions. The Policy does not state that it constitutes a separate employment agreement, nor is there any evidence of "explicit mutual assent to that effect." Thus, Plaintiff's claim for wrongful discharge based on Defendant's alleged failure to follow its Corrective Action Policy fails as a matter of law. Summary judgment shall be granted for Defendant on Count V.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that Defendant's Motion for Summary Judgment (Doc. 34) is **GRANTED in part** and **DENIED in part**. With regard to Counts I, II, III, and V[24] of the Complaint (Doc. 1), the motion is **GRANTED**. With regard to Count IV (under the Florida Whistleblower Act), the motion is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida this 10th day of November, 2009.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

_____

[24]As noted earlier, Count V is mislabeled as a second "Count IV" in the Complaint.